PARKER, Respondent, vs. FAIRBANKS-MORSE MANUFACTUR-
ING COMPANY, Appellant.

*January 10—January 29, 1907.*

*Master and servant: Negligence: Personal injuries: Reasonably safe·*
*place to work: Instructions to jury: Appeal and error: Imma-*
*terial error: Contributory negligence: Assumption of risk: Ex-*
*cessive damages: Remarks of counsel.*

1. While the rule as to a master's measure of duty in furnishing a.
   servant a reasonably safe place to perform his duties, *i. e.*
   that the master use ordinary care in furnishing a reasonably
   safe place, and that such duty is absolute and not dependent
   on the degree of care exercised by the master in performing.
   it, is unquestionably correct, submission to the jury of instruc-
   tions as to the measure of the master's duty is required only
   when there is credible evidence in the case that would justify
   the jury in drawing the inference that the master, when an
   accident occurred, either had or had not performed his duty
   to the servant of furnishing him such reasonably safe place.
2. In such case if the evidence permits of no other inference than
   that the master failed in this duty to the servant, it devolves
   upon the court to determine that question as matter of law,
   leaving nothing for the jury to pass upon in respect to it.
3. Under such a state of the evidence, submission of the issue to
   the jury under erroneous instructions is immaterial error.
4. When, in an action by a servant for injuries sustained from the·
   collapse of a defective scaffolding erected by the master, no·
   other inference can be drawn than that the master did not fur-
   nish the servant a reasonably safe place to work, it is *held* that.
   it was the duty of the court to declare, as matter of law, that.
   the master was guilty of negligence.
5. In an action by a servant for injuries sustained from the col-
   lapse of a defective scaffold erected by the master, it appeared,
   among other things, that the servant did not observe or know
   how the scaffold was erected or supported, although he was
   working on the wall near it, and that he assumed that it was
   properly constructed and reasonably safe. *Held*, under the
   facts and circumstances, stated in the opinion, that there were·
   no grounds in the evidence for the contention that the serv-
   ant was guilty of contributory negligence, or that, as matter
   of law, he assumed the risk of the danger incident to the col-
   lapse of the structure.

6. The use of the word "fair" in a phrase of the instructions to the jury: "The burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence," in connection with a direction that the jury must be satisfied of the existence of the fact referred to, is not misleading and therefore not prejudicial.

7. A servant, sixty-four years of age, was injured by the fall of a scaffold. His right leg was crushed, his left arm broken near the wrist, his right arm dislocated, his left leg and knee injured, the bones of his nose broken, and the larger part of his upper lip cut through. His right leg had to be amputated at the junction of the upper with the middle third of the femur. During a period of several months in the hospital he suffered much pain and troublesome sores developed. After leaving the hospital he was delirious at times as the result of his pain and suffering and he suffered much from sleeplessness. His condition up to the time of the trial necessitated much care and nursing, and it appeared that he would require such assistance for an indefinite period. It was uncertain whether he would be able to make use of an artificial limb and to what extent he would be able to employ artificial aids to locomotion. Before the accident his health had been apparently good, and he had always been active as a laborer and contractor, but had practically become disabled from pursuing his occupation. His earnings had averaged from $1,200 to $1,500 a year. *Held*, that a verdict of $13,500 was not excessive.

8. Where the court had instructed the jury that remarks of counsel, to which exception was taken, must be disregarded in their determination of the questions submitted, it is *held* that no prejudicial effect could have resulted from such remarks of counsel.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Action for personal injuries. It appears that the defendant is a corporation engaged in the manufacture of machinery and engines in the city of Beloit, Wisconsin, owning and maintaining buildings used as mills and shops. At the time of this accident it was engaged in erecting a second-story addition to a shop building. The old one was a one-story brick structure, with hip roof in sections running east and west across the building, which was longest north and south. The

improvement consisted of a second-story brick structure, to be
built on top of the walls of the original structure. The plaint-
iff was engaged as a bricklayer on the walls of this new part
of the structure. The accident happened on October 10, 1904.
At the time of this accident the walls of the addition to the
shop had been built to, and in part above, what is called scaf-
fold height. Plaintiff was engaged at the southwest corner
of the addition in laying the outside brick wall, which was
somewhat higher than the rest of the south east-and-west wall.
He was working on a scaffolding inside of the wall along the
west end of the structure. In performing his duty it was nec-
essary to use the leadline for laying the bricks on the outside
of the walls. This line was placed over and around the corner
and attached to a pin fastened in the outside of the south wall.
When the wall had been built to a height so he could not reach
from where he stood on the inside scaffolding to change the
pin and leadline, it was necessary for him to go onto the scaf-
folding outside of the south wall to adjust the line. Some
days before the accident the defendant's mason foreman had
notified the carpenter foreman engaged on this building that
the scaffolding on the outside south wall would be needed to
proceed with the erection of the building. On Friday and
Saturday preceding the Monday when the accident happened,
carpenters under the direction of the carpenter foreman built
this outside scaffolding, except the west end of it, which was
completed early in the forenoon of Monday and shortly before
the accident. It was placed on the roof of the old structure,
immediately south of the wall of the new addition. It con-
sisted of uprights and standards, with ledger boards, footlocks
[putlocks], and planks for the covering or floor on which
the workmen were to stand and building material was to be
placed. Soon after the carpenters had completed it, the plaint-
iff, while engaged in laying the southwest corner of these
walls, as above stated, stepped from the inside scaffolding over
the south wall onto this outside scaffolding to adjust the lead-

line at this corner, and then returned to his work on the inside scaffolding. In the course of about ten or fifteen minutes the leadline required resetting, and he again stepped over the south wall onto this outside scaffolding to perform this duty. While so engaged near the southwest corner the scaffolding collapsed and fell, throwing him violently to the ground among the planks and other material of the scaffolding, causing him serious personal injuries.

It appears that no other weight than that of the plaintiff was on this scaffolding at the time it fell. He had used it in the usual and ordinary way and for the purpose for which it was designed. It is claimed that the scaffolding was defectively constructed and not reasonably safe; that defendant was guilty of negligence in not performing its duty in this respect. Allegations of specific negligence were that the scaffolding was insufficient and unsafe by reason of defendant's omission to place the footlock nearest the southwest corner of the building into a footlock hole of the south wall (footlocks are pieces of lumber extending from the ledger boards to the wall, upon which the floor of the scaffolding rests, and footlock holes are openings in the walls into which the footlocks are placed to hold them in place); that the westerly footlock was too far removed from the corner of the building and insecurely placed and supported by too short a standard, and that this was in turn supported at its foot by two or three bricks under it; that this footlock was not securely nailed to the standard; and that the scaffolding floor was composed of short planks so placed and projected over the last footlock as to render the structure insufficient and not reasonably safe for its purposes. The plaintiff's injuries were serious and caused him much pain. The evidence tends to show that he suffered the following injuries: The right leg was crushed, a break near the left wrist, dislocation of the right arm, injury to his left leg and knee, a break of the bones of the nose, and a cutting through the larger part of his upper lip. His right leg had

to be amputated at the junction of the upper with the middle third of the femur. During the period of several months in the hospital plaintiff suffered much pain and troublesome sores developed. After leaving the hospital in January following the accident he was delirious at times as the result of his pain and suffering and suffered much from sleeplessness. His condition up to the time of the trial has necessitated much care and nursing, and he will require such assistance for an indefinite period. It is uncertain whether he will be able to make use of an artificial limb and to what extent he will be able to employ artificial aids to locomotion. Before the accident plaintiff's health was apparently good. He had always been active as a laborer and contractor. His earnings from his business ranged from $1,200 to $1,500 a year. At the time of the injury he was sixty-four years of age. The jury found by general verdict for the plaintiff, and assessed his damages at $13,500, for which sum and costs judgment was awarded him. This is an appeal from such judgment.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* attorneys, and *E. M. Ashcraft,* of counsel, and oral argument by *E. P. Vilas.*

For the respondent there was a brief by *Fethers, Jeffris & Mouat,* and oral argument by *M. G. Jeffris* and *M. O. Mouat.*

SIEBECKER, J. Appellant urges an exception to the court's instruction pertaining to appellant's duty of furnishing respondent a reasonably safe place to perform his duties as a servant. The instruction is criticised as not submitting to the jury appellant's measure of duty in this respect by informing the jury "that it is the duty of [appellant] to use ordinary care in constructing a reasonably safe place," and in omitting to direct them that such duty is an absolute one and is not dependent on the degree of care exercised by the master in performing it. The rule contended for is unquestionably

correct. *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48. Whether the court prejudicially erred in the instruction given need not be considered in view of our conclusion in the case. The instruction complained of attempted to inform the jury of the defendant's duty as to furnishing a reasonably safe place for plaintiff to perform his duties as defendant's servant, and they were to determine from the evidence adduced whether defendant had failed, as charged in the complaint, to perform this duty to plaintiff. Submission of this inquiry to the jury is required only if there be credible evidence in the case that would justify the jury in drawing the inference that defendant, when the accident occurred, either had or had not performed its duty to plaintiff of furnishing him a reasonably safe place to do his work. If the evidence permits of no other inference than that defendant failed in this duty to plaintiff, it devolved on the court to determine that question as matter of law, leaving nothing for the jury to pass upon in respect to it. Under such a state of the evidence, submission of the issue to the jury under erroneous instructions is immaterial error, because it did not affect the rights of the parties arising from such undisputed state of the evidence. We are persuaded that there can be but one inference from all the credible evidence before us respecting defendant's neglect to furnish plaintiff a reasonably safe place to work. The facts and circumstances bearing on this question all point one way, namely, that the scaffolding was so defectively constructed that it was not a reasonably safe place for plaintiff to perform the duties assigned him. From the foregoing statement of facts it appears that defendant furnished this scaffolding for plaintiff's use in building the walls of the new structure, and that the weight of his body alone caused it immediately to collapse. There is nothing to show but that he used it in a proper and ordinary way; nothing was done nor did anything take place which should cause it to collapse aside from the fact that it was not sufficiently strong to

support plaintiff. The physical facts surrounding the accident are clear and undisputed, and clearly tend to show that the falling of the structure must have resulted from some defect in its construction. From these facts no other inference can be drawn than that the defendant did not furnish plaintiff a reasonably safe place to work. *Spaulding v. C. & N. W. R. Co.* 33 Wis. 582; *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176. This situation called upon the court to declare, as matter of law, that defendant was guilty of negligence as charged by the plaintiff, and it left nothing for submission to the jury as to this issue of the case. The jury having no question of fact to ascertain upon this issue, it becomes immaterial what instructions were actually submitted respecting it, since the verdict is in harmony with the fact.

It is urged that the plaintiff was guilty of a want of ordinary care in using the scaffolding. The argument is made that he knew, or in the exercise of ordinary care ought to have known, that no footlock hole had been left for the support of the westerly footlock, and that this fact imposed on him the duty to examine the structure as to its sufficiency and safety, before going onto it, and that, having failed to do so, he assumed the risk incident to its use as constructed. The evidence is uncontradicted that plaintiff did not in fact observe or know how the footlocks were placed or supported. The claim that, since he was working on the wall near the scaffolding, he could not avoid observing that there was no footlock hole for the support of the westerly footlock, and that he therefore, in the exercise of ordinary care, was required to inform himself how it was in fact supported, and that such inspection would have disclosed to him any defects in the construction of the structure, is not sustained. The evidence does not clearly disclose that he was informed that no footlock hole had been provided for the support of the westerly footlock, nor

does the evidence clearly support the inference that he observed how the carpenters supported it, nor does it appear that he was otherwise informed how the carpenters supported or constructed any part of it. The evidence tends to show that he assumed that it was properly constructed and reasonably safe. Under the facts and circumstances we discover no grounds in the evidence for the contention that plaintiff was guilty of contributory negligence as matter of law in the respects claimed, or that he assumed the risk of the danger incident to the collapse of the structure. The question was properly submitted to the jury for determination.

An exception is urged to the use of the word "fair" in the phrase of the instruction: "The burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence." As held in *McKeon v. C., M. & St. P. R. Co.* 94 Wis. 477, 487, 69 N. W. 175, the use of the word "fair" in such connection, with a direction to the jury that they must be satisfied of the existence of the fact referred to, is not misleading and therefore not prejudicial. *Curran v. A. H. Stange Co.* 98 Wis. 598, 74 N. W. 377.

It is contended that, in view of plaintiff's injuries, his age, and his previous earning capacity, the amount of damages awarded is excessive, and that it shows that the jury were improperly influenced by passion and prejudice in determining this question. The extent of his injuries has been set out in the foregoing statement of facts. That they were accompanied by severe pain and suffering is without question. It is apparent to a reasonable certainty that his injuries will cause him pain and suffering in the future, that he will require extra personal care and attention on account of them, and that he is practically disabled from pursuing his occupation. These elements of injury, the actual loss of his leg, the injured condition of the other leg and arm, and the resultant nervous condition persuade us that it cannot be said that the damages allowed are so large as to warrant the court in hold-

ing that the jury improperly allowed them. The verdict must stand.

We have examined the exceptions taken to the remarks of counsel, and find that the court instructed the jury properly to the effect that the remarks so excepted to must be disregarded by them in their determination of the questions submitted. Under the circumstances we are of opinion that no prejudicial effect could have resulted from them.

No prejudicial error is discoverable in the record.

*By the Court.*—Judgment affirmed.